IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:18-cr-00012 |
| | ) | |
| DASHAWN ROMEER ANTHONY | ) | |
| *Et al.* | ) | |

**UNITED STATES' OPPOSITION CLARIFYING AND CORRECTING
DEFENDANTS' DISCOVERY REPRESENTATIONS**

On December 19, 2018, all of the remaining defendants in this case filed a motion with the Court asking for a continuance of the January 2019 deadline to file severance motions. *See* ECF No. 220. The United States does not oppose the motion for the reasons stated by the defendants; however, the United States would like to correct several misrepresentations regarding the status of discovery and Production 5 that were contained in the motion, as follows:

1.  As the Court will recall, the United States has made a series of discovery productions, starting less than a month after the arrest of the defendants on June 14, 2018 and running to November 27, 2018.[1] The largest of these disclosures was Production 5, which the United States provided to the Discovery Coordinator on November 7, 2018.

2.  In their Motion, the defendants state that Production 5 is "twice the amount of all discovery previously provided by the government," implying that the United States as intentionally

---

[1] Production 1 was disclosed starting July 6, 2018 (48.1 GB). Production 2 was disclosed starting August 1, 2018 (83.3GB). Production 3 was disclosed on August 31, 2018 (14.9 GB). Production 4 was disclosed on October 2, 2018 (171 GB). Production 5 was disclosed on November 7, 2018 (248 GB). Production 6 was disclosed on November 27, 2018 (30.14 GB).

1

delayed discovery.  Mot. at 2.  This is inaccurate.  The first four productions totaled 317.3 GB. Production 5 was 248 GB.  Indisputably, Production 5 was a large production, the size of which was greatly affected by the video files contained in the production – but in no way did it exceed the first productions from the government.  The United States has sought to provide thorough discovery in a timely manner while balancing real and significant witness safety issues.

3. Further, the defendants' description of the materials contained in Production 5 is misleading.  *See* Mot. at 2-3.  In their Motion, the defendants list the number of various files types.  The United States has tried to calculate the numbers stated by the defendants in their motion and cannot do so.  For example, when the government runs a property search through the production, it only finds 1,242 PDF files (i.e., documents), which include items like grand jury transcripts, exhibits, and police reports – a number 6 times <u>less</u> than the figure provided by the defendants.  As another example, in reviewing the video files, the government notes that there are only 116 interview and body worn camera <u>files</u> contained in Production 5,[2] which is comprised of approximately 26 substantive interviews related to this case; approximately 9 interviews by officers trying to locate Kevin Trent and Tanasia Coleman (after they fled from arrest by police on June 14, 2018); and approximately 40 body worn camera videos from police actions (such as search warrants, traffic stops, and arrests) – not the almost 5,700 "videos" described by the defendants in their motion.  As another example, the governments' calculation of the number of audio files is nowhere near that of the defendants, and the government does not know how the

---

2   Interview and body worn camera videos are typically broken down into 1-hour segments, with each segment a separate video file.  For example, one interview of one witness is contained in three, one-hour video files.  Therefore, the number of files can give you an approximation of how many hours of interviews/body worn camera videos exist.

defendants reached that number. However, the government does know that there is only one substantive audio file in Production 5 (an interview of Defendant Kevin Trent) and that a single cellphone extraction report can contain hundreds of audio files, which are typically completely irrelevant items, like ring tones and music files.[3] The Discovery Coordinator is capable of identifying the relevant and substantive files for the defendants so that they are not spending time reviewing "chaff."[4] The defendants' calculations are misleading, and the United States encourages the Court to contact the Discovery Coordinator so that the Court has an accurate understanding of the discovery contents.

4. Finally, the defendants claim that the government has provided materials "inaccessible to the defendants' counsel" and then discuss an example. Mot. at 3-4. This is also inaccurate. Officers with the Danville Police Department interviewed Defendant Deshawn Anthony on three occasions: June 2017, October 2017, and November 2017. Production 2 contains copies of these interview videos. DPD officers interviewed Defendant Kevin Trent in November 2016. A copy of that interview in contained in Production 3. In September 2018, after the United States released Production 3, the Discovery Coordinator informed the government that <u>one</u> of the Deshawn Anthony interviews and the Kevin Trent interview were not playable. The United States was able to correct the problem with the Trent interview and produced a corrected copy of that interview in Production 5. The government has been unable to correct the

---

[3] The Facebook accounts also contain a number of files that are technically media files, but are really items like emjois or thumbnail-sized photos, such as profile pictures or icons.

[4] In fact, the discovery materials as provided to the Discovery Coordinator were labeled and organized in such a way as to make this identification of relevant materials quick and easy.

3

Anthony interview, and cannot play the video itself as the execution file appears corrupted. In other words, the video is not playable to any party. Therefore, out of the numerous video files the government has produced, only <u>one</u> is "inaccessible." The United States knows of no other discovery issue, nor has been informed of one by the defendants or the Discovery Coordinator – in contradiction to the defendants' motion, which more than implies that the government has provide numerous problematic discovery materials.

5. The United States has provided virtually open file discovery, which will, by its nature, contain numerous files irrelevant to the charges in this case (e.g., ring tones and music files from cellphone extractions), which the Discovery Coordinator can help the defendants identify. In addition, to help facilitate the defendants' discovery review, the United States has provided a very organized format, searchable files, and <u>its own work product</u>, such as its detailed and thorough analyses of the defendants' Facebook accounts.

4

THEREFORE, the United States does not substantively oppose the defendants' motion to continue the January 2019 motion to sever deadline, but seeks to correct what it believes are misleading representations about the government's discovery productions in this case.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

s/Heather L. Carlton
Ronald M. Huber, VSB No. 31135
Heather L. Carlton, VSB No. 84752
Assistant United States Attorneys
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel:   434.293.4283
Ron.huber@usdoj.gov
Heather.carlton@usdoj.gov

DATED: December 21, 2018

## **C E R T I F I C A T E**

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk by CM/ECF system, which will send notification of such filing to all counsel of record, on this 21st day of December, 2018.

s/Heather L. Carlton
Assistant United States Attorney
