**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Danville Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Prosecution,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:18CR00012** |
| | ) | |
| | ) | |
| **JERMAY ANTONIO SMITH, JR.,** | ) | |
| **Accused.** | ) | |

## <u>MOTION TO SEVER</u>

The Accused, Jermay Antonio Smith, Jr., respectfully moves this Court to sever his case from that of his codefendants. In making this Motion, Mr. Smith relies on his rights to due process, to a fair trial by jury, to confront the witnesses against him, to be free from cruel and unusual punishment, and other rights protected by the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

In support of this Motion, Mr. Smith states as follows:

1. Mr. Smith was born in 1998 and is twenty years old. The majority of the allegations in this indictment occurred when Mr. Smith was under the age of eighteen.

2. Mr. Smith is charged with allegedly participating in a "racketeering conspiracy" as a member of the "Milla Bloods" in Danville, Virginia. *See* Indictment (Doc. 5), Count 1. The prosecution alleges that the Millas have "operated in the Western District . . . since at least sometime in or about 2015." *Id.* at 2. Mr. Smith was sixteen for the first half of 2015 and seventeen for the second half.

3. The prosecution alleges that members of the Millas "engaged in shootings and acts involving murder," "robbed individuals and businesses," "trafficked in

firearms," "obstructed justice," and "distributed controlled substances . . . to help finance their enterprise." Doc. 5 at 5–6. The prosecution thus intends to introduce allegations of illegal activity that occurred in 2015 and the first half of 2016, when Mr. Smith was under eighteen.

4. The prosecution's alleged overt acts focus on people other than Mr. Smith committing crimes when Mr. Smith was a juvenile.

5. The prosecution alleges five specific overt acts performed in furtherance of the alleged conspiracy. One concerns the possession of marijuana by Montez Allen, an allegation that does not implicate any other codefendant. *Id.* at 8.

6. Another alleged overt act is the attempted murders of Armonti Womack and Dwight Harris on June 15, 2016. *Id.* Mr. Smith is *not* alleged to have been involved in these attempted murders. (In fact, out of the five remaining defendants, only Mr. Keene and Mr. Terry are alleged to have been involved.) Moreover, Mr. Smith was under eighteen at the time of those alleged offenses.

7. A third overt act alleged by the prosecution is that "between 2016 through 2018," each of the eight codefendants "trafficked in marijuana throughout the Danville, Virginia region." *Id.* at 9. Setting aside the obvious notice issues with this allegation,[1] Mr. Smith was under eighteen for the first half of 2016, and actually has been jailed for the majority of the time between his eighteenth birthday and his arrest in this case.[2] Although discovery review is incomplete, counsel has

---

[1] This allegation is extremely vague and provides constitutionally insufficient notice. That will be the subject, however, of a later motion.
[2] Upon information and belief, Mr. Smith was jailed from approximately November 28, 2016 to February 22, 2017; from March 17, 2017 to December 12, 2017; and from February 26, 2018 to present.

2

seen no evidence that implicates Mr. Smith in marijuana trafficking, let alone trafficking as an adult.

8.  A fourth overt act alleged is that "between December 2015 through August 2016, Dashawn Romeer Anthony, Jermay Smith, Jr., Tredarius Keene, and others known and unknown . . . were involved in a number of assaults with a deadly weapon throughout Danville, Virginia." *Id.* at 9. Setting aside again the obvious notice issues, Mr. Smith was under eighteen for all but two months of that time period.

9.  The fifth overt act listed in the indictment is the allegation that seven of the codefendants, including Mr. Smith, were involved in the murder of Christopher Motley. This occurred on August 20, 2016, less than two months after Mr. Smith turned eighteen. This allegation provides the only real cause for charging Mr. Smith as an adult in this case. (Notably, Mr. Smith is charged under an accomplice liability theory. He is not alleged to have instigated the homicide or to have fired the single shot that killed Mr. Motley.)

10. Consistent with his youth, Mr. Smith is not alleged to have had any leadership role whatsoever in this alleged enterprise. Seven other defendants were charged in the racketeering conspiracy. Out of those codefendants, three (Dashawn Anthony, Demetrius Staten, and Tanasia Coleman) are no longer trial defendants. Notably, all three of those codefendants were alleged to have leadership roles in the Millas. Anthony was alleged to be "at the top of the racketeering enterprise hierarchy in Danville at times relevant to this indictment." Staten was alleged to have "a leadership position" that was "one level below" Anthony. Coleman was alleged to have "held the rank of 1-Star." *Id.* at 6.

11. Mr. Smith is one of five remaining codefendants. Three of the other four remaining codefendants are alleged to have held leadership positions. (Javontay Holland is alleged to have "held various leadership ranks" and both Jalen Terry and Tredarius Keene are alleged to have been "5-Stars.") Out of all the defendants charged in this case, only Mr. Smith and Montez Allen are alleged to have been simple "members" of the Millas. *See id.* at 6–7.

12. Mr. Smith is not charged in Counts Two through Nine, which relate to the alleged attempted murders on June 15, 2016. Again, Mr. Smith was a juvenile at the time of these offenses. Mr. Smith is charged, however, with Counts Ten through Fifteen, which relate to the alleged murder and attempted murder on August 20, 2016.

13. The shootings on June 15 and August 20 both occurred at the same apartment complex, North Hills. However, the allegations are unrelated, and only two of the remaining defendants are alleged to have been involved in the June 15 shooting.

14. As discussed in detail below, Mr. Smith's actions as a juvenile are *not* admissible as substantive evidence of his guilt. *A fortiori*, the actions of other people when Mr. Smith was a juvenile are not admissible as substantive evidence of his guilt.

15. The joinder of Mr. Smith—a young man who was a child for most of these allegations—with adults who allegedly committed serious crimes without his knowledge or participation thus would deprive Mr. Smith of a fair trial.

16. In this case, it makes the most sense to try Mr. Smith alone to ensure that (1) the jury is not exposed to otherwise inadmissible allegations about crimes committed by adults when he was a child and (2) the jury considers his juvenile actions only for limited, appropriate purposes.

4

## Legal Argument

### 1. Governing legal principles.

Under Fed. R. Crim. P. 8(b), an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts of transactions, constituting an offense or offenses." Rule 8 allows for broad joinder at indictment. *See United States v. Mackins*, 315 F.3d 399, 412–13 (4th Cir. 2003). "Rule 8 is 'not infinitely elastic,' however, because unrelated charges create the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005).

Even if joinder at indictment was proper, this Court can exercise its discretion to sever trials in the interest of justice. The District Court has great discretion in the decision whether to sever trials. *See, e.g.*, *Butler v. United States*, 317 F.2d 249, 264 (8th Cir. 1963) ("[W]ith no legal limitation upon the number of defendants who may be jointly indicted, the question whether a defendant is prejudiced by a joinder of offenses or of defendants in an indictment is in the first instance addressed to the sound discretion of the trial court . . . ."). "If the joinder of offenses or defendants . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "This rule contemplates that joinder under Rule 8(a) can be proper and, at the same time, severance can be required." *Cardwell*, 433 F.3d at 387. Severance should be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The risk that a jury might be prevented from making a reliable judgment "might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* The Supreme Court has noted that "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. *When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened*." *Id.* (emphasis added).

**2. Mr. Smith's case should be severed.**

In this case, Mr. Smith's case should be severed for three reasons. *First*, Mr. Smith was a juvenile during most of the events alleged in this indictment. Consequently, most of the crimes alleged in this case would not be admissible against him in a separate trial. *Second*, Mr. Smith is not alleged to have held a leadership position in the Millas, and thus has a markedly lower level of alleged culpability. As noted in *Zafiro*, this heightens the risk that Mr. Smith will be prejudiced by joinder. *Third*, Mr. Smith is not alleged to have been involved in one of the two unrelated shootings that form the core of this case. This shooting also occurred when Mr. Smith was a juvenile and would be inadmissible against him. Each of these reasons are discussed separately below, but their cumulative effect should be considered when assessing whether a jury in this case could make a reliable judgment about Mr. Smith's guilt or innocence.

i. *Events that occurred when Mr. Smith was a juvenile cannot be used as substantive evidence of his guilt.*

Mr. Smith was a juvenile during most of the events alleged in this indictment. Under the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. §§ 5031 *et seq.*, "a 'juvenile' is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his

twenty-first birthday . . . ."  18 U.S.C. § 5031.  In this case, Mr. Smith is twenty years old and

was under eighteen during most of the events alleged in Count 1 ("the RICO count").  Mr. Smith

was also under eighteen during the events alleged in Counts 2 through 9, but he is not charged in

those counts.  Mr. Smith turned eighteen, however, less than two months before the homicide

charged in Counts Ten through Fifteen.

The Fourth Circuit has held that the FJDA "does not . . . prevent an adult criminal

defendant from being tried as an adult simply because he first became embroiled in the

conspiracy with which he is charged while still a minor . . . ."  *United States v. Spoone*, 741 F.2d

680, 687 (4th Cir. 1984).  Thus, this Court has jurisdiction over Mr. Smith's conspiracy charge

so long as the prosecution "offer[s] evidence to show that the conspiracy, as well as his

involvement in it, continued past his eighteenth birthday."  *Id.*  Specifically, the prosecution must

show that "the defendant engaged in some overt act indicating his *ratification* of the conspiracy

after attaining his majority."  *United States v. Claiborne*, 92 F. Supp. 2d 503, 514 (E.D. Va.

2000) (citing *Spoone*, 741 F.2d 680, 687 (4th Cir. 1984); *United States v. Strothers*, 77 F.3d

1389, 1391–92 (D.C. Cir. 1996)).

Even if this court has jurisdiction over Mr. Smith's conspiracy charge, however, the jury

*cannot* "consider the juvenile acts as evidence of [Mr. Smith's] guilt."  *See Spoone*, 741 F.2d at

687; *see also Claiborne*, 92 F. Supp. 2d at 514 ("The accused may not be held criminally liable .

. . for acts in furtherance of the conspiracy committed prior to age eighteen. . . . Evidence of the

juvenile acts may not be considered as substantive evidence of guilt.").  Thus, any evidence of

alleged criminal activities by the Millas before June 26, 2016 cannot be considered as

substantive evidence of Mr. Smith's guilt.  Consequently, much of the evidence in this case

would be inadmissible in a separate trial.

*Spoone* and its progeny indicate that *some* of Mr. Smith's alleged pre-eighteen involvement in the Millas could be admissible for *limited* purposes. The Court in *Spoone* observed that evidence in that case "relating to [the defendant's] activity before his eighteenth birthday . . . would have been admissible against him in a separate trial to show both the existence of the conspiracy and his knowledge of its purpose." *See Spoone*, 741 F.2d at 688; *see also Claiborne*, 92 F. Supp. 2d at 514 ("Evidence of such acts may only be admitted for the limited purpose of putting the accused's subsequent post-eighteen conduct within the context of the conspiracy."). Thus, for any pre-eighteen allegation involving Mr. Smith, the Court must decide whether it is probative of his knowledge of the conspiracy and its purpose. Of course, the Court also must decide whether that probative value is substantially outweighed by dangers such as unfair prejudice, jury confusion, or misleading the jury. (Given that pre-eighteen conduct is not admissible as substantive evidence of Mr. Smith's guilt, his defense anticipates that most such evidence will raise these concerns.).

In this case, the vast majority of the conspiracy prosecution concerns evidence that is either inadmissible against Mr. Smith or admissible for only limited purposes. In Count 1, the prosecution alleges a conspiracy that began in 2015, when Mr. Smith was sixteen to seventeen years old. The prosecution alleges that members of the Millas "engaged in shootings and acts involving murder," "robbed individuals and businesses," "trafficked in firearms," "obstructed justice," and "distributed controlled substances . . . to help finance their enterprise." Doc. 5 at 5–6. Evidence that Mr. Smith's codefendants engaged in such activities while he was a juvenile is not evidence against him. And if there is evidence that he was engaged in any of these activities as a juvenile, that would be admissible only to show his knowledge of the conspiracy, and not to prove guilt.

As an overt act, the prosecution alleges that Mr. Smith and his codefendants trafficked marijuana between 2016 and 2018, a period during which Mr. Smith was under eighteen for part of the time. Additionally, the prosecution vaguely asserts that Mr. Smith and two of his codefendants were involved in assaults with a deadly weapon from December 2015 through August 2016. Because Mr. Smith was a juvenile until June 26, 2016, most of these alleged events are either inadmissible against Mr. Smith or admissible only for limited purposes. In fact, given the vagueness of these allegations, it is possible that all of these events occurred when Mr. Smith was a juvenile. This is particularly likely in light of the fact that Mr. Smith was in jail for most of the time between his eighteenth birthday and his arrest in this case.

The vagueness of each of the above allegations is particularly concerning for Mr. Smith's fair trial rights. Counsel's review of discovery reveals that witnesses in this case often give broad time frames for alleged events. While the exact timing might not be as important for the prosecution or Mr. Smith's codefendants, it is crucial for Mr. Smith. The specific date of any event involving Mr. Smith determines not only the admissibility of the allegation, but also whether it can be considered as evidence of guilt or only for another, limited purpose. A trial replete with these questions would prejudice Mr. Smith due to the high risk of jury confusion or a conviction based on events that legally must not be considered against him. Additionally, these issues would require continued litigation, counteracting any efficiency gains resulting from a joint trial.

Of course, the most prejudicial allegation that would be included in a joint trial is evidence concerning the attempted murders of Armonti Womack and Dwight Harris on June 15, 2016. Two of the remaining codefendants are charged in these attempted murders, but there is no allegation that Mr. Smith was involved. Mr. Smith was only seventeen years old at the time of these shootings. This alleged shooting thus has nothing to do with Mr. Smith and would not

9

be admissible in a trial against him. Under these circumstances, there is a great risk that a joint trial would prevent the jury from making a reliable judgment about Mr. Smith's guilt or innocence by exposing the jury to irrelevant information about the actions of codefendants when Mr. Smith was a child. This is particularly true given the inclusion of an irrelevant shooting that happened in the same location (North Hills) as the shooting with which Mr. Smith actually is charged as an adult.

    *ii. Mr. Smith's markedly different culpability heightens the risk of prejudice.*

The Supreme Court has noted that "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539. In this case, Mr. Smith is one of two remaining defendants whom the prosecution alleges were simply members of the Millas. Doc. 5 at 6–7. The other three remaining defendants allegedly occupied leadership positions in the Millas, Tredarius Keene and Jalen Terry as a 5-star, and Javontay Holland in "various leadership ranks for the racketeering enterprise." *Id.* at 6.

Moreover, the current status of this case is that persons who held leadership positions in the Millas are likely to be prosecution witnesses. These witnesses are likely to testify about issues concerning the leadership of the Millas and events in which only these leaders were involved. Meanwhile, Mr. Anthony—the lead defendant and alleged "Big Homie" of the Millas—has entered a non-cooperation plea and is no longer even a defendant in this case. The result is that significantly more culpable persons are likely to be witnesses against Mr. Smith, a young man who was a child during most of the leaders' activities. Keeping Mr. Smith joined with defendants who allegedly had leadership roles in the Millas thus exposes the jury to extensive prejudicial information that has nothing to do with Mr. Smith and would be

inadmissible against him. As noted in *Zafiro*, this heightens the risk of prejudice—a risk that is already great given the fact that Mr. Smith was a child for most of these events.

### iii. Joinder with defendants charged in an unrelated shooting confuses the issues.

Finally, the joinder of Mr. Smith with defendants who are charged in the Womack/Harris shooting exacerbates the risk of prejudice. As noted above, Mr. Smith was seventeen at the time of this shooting and there is no allegation that he was involved in it. Out of the remaining defendants, only Mr. Keene and Mr. Terry are alleged to have been involved. However, the inclusion of this evidence is highly prejudicial because it involves two attempted murders that occurred in the same location (North Hills) as the Motley homicide.

Counsel's discovery review and investigation thus far indicates that the Womack/Harris shooting was a personal dispute, not a crime in furtherance of the Millas. Upon information and belief, Tanasia Coleman (who has pleaded guilty and is no longer a codefendant) and Ashley Ross (an alleged Crip who is indicted in a different case) lived in North Hills. Tredarius Keene frequently stayed at Ross's apartment. Coleman was dating Armonti Womack, a young man from Philadelphia. Womack and his friend, Dwight Harris, were also related to Ross. Ross, Womack, and Harris were involved in a fraud scheme together that did not involve the Millas. On the day of the shooting, Womack, Harris, and Coleman got into a dispute, and Keene allegedly called friends of his, including Jalen Terry, to North Hills. Due to the resulting shooting, Keene and Terry were each charged with two counts of attempted murder, two counts of assault with a dangerous weapon, and four firearm counts.

Although the Womack/Harris allegations involve Mr. Terry and Mr. Keene, they have nothing to do with Mr. Smith. There is no allegation that Mr. Smith was involved in this shooting in any way, and he was a child when it happened. Evidence of the Harris/Womack shooting would thus be inadmissible in a separate trial against Mr. Smith. Because this shooting

occurred in the same place as the Motley homicide, however, there is an increased risk that the jury will conflate the events to Mr. Smith's prejudice.

 *iv. Conclusion.*

 Mr. Smith is a young man who was a juvenile during most of the events charged in this indictment. The top names in this indictment were the alleged highest leaders of the Millas in Danville. Three of Mr. Smith's four remaining codefendants are also alleged Milla leaders. This leaves Mr. Smith to face a trial filled with evidence of the actions of gang leadership that happened when he was a child, including a shooting that occurred without his knowledge or participation.

 This Court has great discretion in granting separate trials. In this case, a separate trial for Mr. Smith would not require a great deal of repetition of evidence. Most of the allegations in this case do not involve Mr. Smith and would be inadmissible against him due to his status as a juvenile during their occurrence. By including Mr. Smith in this indictment, the prosecution is hoping to sweep him up in the jury's assessment of adults who allegedly engaged in much more serious and prejudicial behavior. This Court should sever Mr. Smith's trial so that the case against him can be assessed on its own merits.

 WHEREFORE, Mr. Smith respectfully requests that this Honorable Court sever his case from that of his codefendants.

     Respectfully submitted,

     JERMAY ANTONIO SMITH, JR.

     s/ <u>Bernadette Donovan</u>

Matthew L. Engle
Virginia Bar No. 46833
*Counsel for Mr. Smith*
DONOVAN & ENGLE, PLLC
1134 East High Street, Unit A
Charlottesville, Virginia 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
matthew@donovanengle.com

Bernadette M. Donovan
Virginia Bar No. 82054
*Counsel for Mr. Smith*
DONOVAN & ENGLE, PLLC
1134 East High Street, Unit A
Charlottesville, Virginia 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
bernadette@donovanengle.com

## CERTIFICATE

I, Bernadette Donovan, Esq., hereby certify that on this 29th of March, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ <u>Bernadette M. Donovan</u>

13