IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) <br>                     Prosecution,    ) <br>                                 ) <br> v.                                    ) <br>                                 ) <br>                                 ) <br> JERMAY ANTONIO SMITH, JR.,     ) <br>                     Accused.       ) | Case No. 4:18CR00012 |

## MR. SMITH'S OPPOSITION TO THE PROSECUTION'S MOTION FOR AN ANONYMOUS JURY

The Accused, Jermay Antonio Smith, Jr., respectfully opposes the prosecution's motion to empanel an anonymous jury in this case. Using an anonymous jury would impede the voir dire process and erode the presumption of innocence by creating the false impression that Mr. Smith is a danger to the jury. Mr. Smith's opposition thus rests on his rights to a fair trial, to due process, to be presumed innocent, to an impartial jury, to a trial by jury, to the effective assistance of counsel, to be free of cruel and unusual punishment, and other rights guaranteed by the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

## ARGUMENT

1. **Applicable Legal Standard**

The prosecution has not carried its burden to prove that this is the rare case where an anonymous jury should be empaneled. "A district court should rarely empanel an anonymous jury . . . ." *United States v. White*, 810 F.3d 212, 225 (4th Cir. 2016). "[I]n capital cases, the district court may *only* empanel an anonymous jury after determining, 'by a preponderance of the evidence that providing the list [of the members of the venire and their places of abode] may jeopardize the life or safety of any person.'" *United States v. Dinkins*, 691 F.3d 358, 372 (4th Cir.

2012) (quoting 18 U.S.C § 3432) (emphasis added) (alteration in original).[1] In *Dinkins*, the Fourth Circuit made clear that "[t]he decision to empanel an anonymous jury and to withhold from the parties biographical information about the venire members is, in any case, 'an unusual measure,' which must be *plainly warranted* by the particular situation presented." *Id.* (citing *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991)) (citation omitted) (emphasis added). In particular, there must be "strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised if the jury does not remain anonymous." *Id.* (citing *United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003)). Notably, this is a "more restrictive" standard than that applicable to non-capital cases. *Id.* at 377.

The Fourth Circuit requires *evidence*, not speculation, to warrant an anonymous jury. In *Dinkins*, the Court observed that "the plain language of Section 3432 requires that a district court base its decision to empanel an anonymous jury on *evidence that was in the record* at the time of the district court's ruling." *Id.* at 373 (emphasis added). The Court "may not rely solely on the indictment to support its decision to empanel an anonymous jury under Section 3432, because an indictment is not evidence." *Id.* "Although an indictment may inform a district court's understanding of the case, the language of Section 3432 requires that a decision to empanel an anonymous jury be supported by a preponderance of the evidence." *Id.*

Anonymous juries are disfavored because they seriously endanger multiple constitutional protections. *First*, "anonymous juries may infer that the dangerousness of those on trial required their anonymity, thereby implicating defendants' Fifth Amendment right to a presumption of innocence." *Shryock*, 342 F.3d at 971. *Second*, "the use of an anonymous jury may interfere

---

[1] Mr. Smith agrees with the prosecution that the capital standard should be applied to this case. *See* Doc. 283 n.3 (citing *United States v. Hall*, 506 Fed. App'x 245 (4th Cir. 2013) (unpublished)).

with defendants' ability to conduct voir dire and to exercise meaningful peremptory challenges, thereby implicating defendants' Sixth Amendment right to an impartial jury." *Id.* The prosecution is thus asking for a procedure that would seriously derogate from Mr. Smith's constitutional rights, and (as set forth below) has failed to prove its necessity.

2. Application to This Case

    a. **This is not the rare case in which an anonymous jury is warranted**

At the outset, two points must be emphasized. *First*, no one in this case is charged with obstructing justice, witness tampering, or any other similar offense. *See* Doc. 5. In its Motion, the prosecution repeatedly emphasizes the alleged behavior of defendants in *United States v. Davis*, 4:18-cr-11, ignoring the fact that none of those defendants are on trial in this case. *See, e.g.*, Doc. 5 at 2 ("members of the Rolling 60s Crips gang were involved in obstructing justice by intimidating and threatening witnesses."); *id.* (noting that a Grand Jury indicted "Millas" and "Rollin 60s" for "a variety of other charges, including obstruction-related offenses" but failing to note that *no alleged "Millas"* were charged with obstruction-related offenses); *id.* at 8–9 (relying solely on obstruction allegations against defendants in *Davis*). The law is clear, however, that the prosecution must show by a preponderance of evidence that *this* is the rare case in which an anonymous jury would be required.

*Second*, comparing this case to those in which an anonymous jury has been upheld reveals that the prosecution's request is extraordinary. The prosecution in this case asks that the venire list be redacted so that even counsel would be deprived of prospective jurors' names and addresses. Motion at 11. But anonymous juries are used in far more extreme circumstances than exist here, and even then, both counsel and defendants have been provided with more information. In *Hager*, for example, the Fourth Circuit approved the use of an anonymous jury in a death penalty case where the defendant had a previous obstruction conviction. As the court
3

noted, because of this conviction, "the defendant ha[d] shown a propensity for interfering with the judicial process." *United States v. Hager*, 721 F.3d 167, 188 (4th Cir. 2013). Still, both the defendant and his attorney were provided with the venire list. (The jury was semi-anonymous, because "they were referred to only by number in open court." *Id.* at 186.)

In *Dinkins*, the district court ordered an anonymous jury in part because the defendants "were charged with murdering government informants and witnesses . . . ." *Dinkins*, 691 F.3d at 376. Additionally, "the record before the district court overwhelmingly supported a finding that the defendants previously had engaged in attempts to interfere with the judicial process. In fact, the district court based its decision to empanel an anonymous jury on this consideration alone." *Id.* at 375 (citation omitted). Even in that case, there was individual voir dire, an "extensive jury questionnaire" with "many questions concerning the employment of the venire members and their spouses," and "counsel were provided the zip codes, the county, and the neighborhoods in which the prospective jurors resided." *Id.* at 379.

In a capital retrial in the Western District, Judge Conrad ordered a semi-anonymous jury. *United States v. Mathis*, No. 3:14CR00016, 2015 U.S. Dist. LEXIS 111250 (W.D. Va. Aug. 21, 2015). In that case, "the defendants previously engaged in efforts to interfere with the judicial process." *Id.* at *17–18. Four defendants were charged with murdering a witness and the only two other defendants were charged with obstruction of justice for destroying evidence in the same murder of a witness. *Id.* at *18. "Additionally, during the first trial . . . one of the defendants removed the jury panel list from the courtroom and took it to his jail cell overnight." *Id.* Media coverage was "considerable" and the case was "well-covered by numerous media outlets throughout Virginia." *Id.* at *19. Even under those circumstances, counsel had "full access to all juror information" but were not allowed to share names, addresses, and employers with their clients. *Id.* at *20.

4

In other words, even a *semi*-anonymous jury is reserved for extremely rare occasions. Of course, a fully anonymous jury—such as the prosecution requests here—occurs in only the rarest circumstances. For example, the Fourth Circuit in *White* upheld the use of an anonymous jury where the defendant's "previous convictions each 'reflect[ed] his willingness to use threats or personal information to intimidate persons involved in judicial proceedings.'" *White*, 810 F.3d at 225–26. The defendant in *White* had a prior conviction for soliciting a violent offense against a juror in the Matt Hale trial, and had posted the juror's name, picture, address, and phone numbers, along with the statement that "[e]veryone associated with the Matt Hale trial has deserved assassination . . . ." *Id.* at 226; *see also United States v. Byers*, 603 F. Supp. 2d 826 (2009) (empaneling an anonymous jury in large part because the defendant was charged with murder-for-hire of an eyewitness against him in a state murder case). *White* and *Byers* are the types of case where there is "strong reason" to believe that a juror could be endangered. Simply put, nothing like that exists in this case.

   b. **The *Ross* factors**

Applying the non-exclusive *Ross* factors[2] to this case, the prosecution falls far short of its burden of proof.

   i. *The defendant's involvement in organized crime.*

It is inarguable that the prosecution has charged each of these defendants with racketeering conspiracy. Doc. 5 at 2–9. However, as set forth above, the indictment is not evidence, and there must be actual evidence that these defendants are involved in organized crime. Instead, the prosecution simply asserts that the defendants "terrorized the Danville, Virginia area through organized activity . . . ." Motion at 8. In support of that contention, the

---

[2] Drawn from *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994).

prosecution cites only the indictment and three "Statements of Facts" filed pursuant to plea agreements in this case. *Id.* (citing Docs. 5, 190, 194, 252).

The "Statements of Facts" are not evidence. Rather, they are self-serving, unconfronted documents signed by defendants who are eager for dropped charges and reduced sentences. Moreover, the pleas entered in this case have been made by DaShawn Anthony, Demetrius Staten, and Tanasia Coleman, all alleged leaders of the "Millas." According to Anthony's Statement of Facts, "he was the highest ranking Millas Bloods gang member in Danville" and was engaged in criminal activities with the "Millas" since 2015. Doc. 252 at 2. According to Staten's Statement of Facts, he "was a 'Five-Star' General within the Millas" and committed crimes since 2014. Doc. 194 at 2. Meanwhile, Mr. Smith is a young man who was under eighteen for most of these allegations and is alleged only to have been a member of the "Millas." Given that the alleged *leaders* of this group have entered agreements with the prosecution, there is no reason to believe that an ongoing criminal organization poses a threat to the jury. Anonymous juries are required in rare cases, not every racketeering case. Given the status of this case, there is even less reason to support an anonymous jury here.

> ii. *The defendant's participation in a group with the capacity to harm jurors.*

Similarly, the idea that the "Millas" have the capacity to harm jurors is completely overblown. As set forth above, the alleged leaders of the "Millas" (Mr. Anthony and Mr. Staten) have reached agreements with the prosecution. The only defendants left in this case are young men alleged to have followed and listened to Mr. Anthony and Mr. Staten. In short, there is no evidence that the Millas are an existent group with the capacity to harm anyone.

Perhaps for that reason, the prosecution's argument focuses on the allegation that the "Millas" are a Bloods set, and that "members of the Millas, *as well as the Bloods organization as a whole*, must be seen as a potential threat to the sanctity of these proceedings." Motion at 8

6

(emphasis added). However, the prosecution's own allegations in this case belie that assertion. The prosecution alleges that (1) Anthony and Staten angered the Bloods leadership, (2) that the Millas were targets of the Bloods leadership, and (3) that this dispute between the Millas and the Billy Bloods (sanctioned by leadership) led to the August 20, 2016 shooting. *See* Doc. 190 at 3, Doc. 194 at 2–3, Doc. 252 at 3.[3] The idea that "the Bloods organization as a whole, must be seen as a potential threat to the sanctity of the proceedings" is thus completely untethered from the allegations in this case. (And notably, none of the members of the sanctioned Bloods set have been charged with federal racketeering crimes.)

> iii. *The defendant's past attempts to interfere with the judicial process.*

None of the defendants in this case have been charged with obstruction, witness tampering, or any similar crime. The prosecution points to the fact that two defendants in *Davis* (Shanicqua Coleman and Ashley Ross) have been charged with testifying falsely before the grand jury. Ms. Ross and two of her *Davis* codefendants also have been charged with witness tampering. But there is no evidence that any of the defendants in this case have attempted to interfere with the judicial process. Rather, the evidence suggests that if Mr. Smith or any of his codefendants *had* attempted to interfere, they would have been charged with it.

The prosecution cites no case for the proposition that an anonymous jury can be forced on one group of defendants because an entirely separate group of defendants are alleged to have tampered with witnesses. Moreover, there is no reason to believe that any of the *Davis* defendants would attempt to interfere with the jury in this case. *Davis* proceeds to trial before this indictment, and the fate of the *Davis* defendants will be decided before a jury is even seated in this case. If concerns arise in the *Davis* case, then they can be dealt with in that case. But

---

[3] As noted above, these Statements of Facts are not evidence against Mr. Smith. They are, however, filings that contain the prosecution's factual allegations. As such, they can be used to evaluate the consistency of the prosecution's arguments with its own allegations.

7

those allegations have nothing to do with Mr. Smith, a young man who is not alleged to have interfered with the process in any way.

Notably, the prosecution states that "[t]hough most of the defendants are in custody, all are not." Motion at 9. The fact that two of the *Davis* defendants who were charged with obstruction-related crimes were released on bond does not, however, support the prosecution's position. Rather, it indicates that there is no evidence that those *Davis* defendants pose an ongoing threat to the judicial process. To release on bond defendants in another case who were actually charged with obstruction-related crimes and then penalize the defendants in this case for their release makes little sense.

> iv. *The potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties.*

It is inarguable that Mr. Smith and his codefendants face lengthy incarcerations. However, the *Ross* factors are an imperfect fit for capital-case analysis because of 18 U.S.C § 3432. The Fourth Circuit has explained "that the *Ross* factors are relevant to cases involving capital, as well as non-capital offenses to the extent that those factors shed light on the issues whether an anonymous jury is required" but that ultimately "the record must support" the finding required by 18 U.S.C. § 3432. *Dinkins*, 691 F.3d at 373. Notably, Section 3432 actually requires a *higher* standard for anonymous juries in capital cases, not a lower one. Thus, while the Court can consider the possibility of lengthy sentences in making this analysis, as the *Dinkins* Court did, it would be a perverse result to weigh the potential sentences too heavily in this case. The purpose of Section 3432 is to require more access to information, not less, in capital cases.

> v. *Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.*

8

Case 4:18-cr-00012-MFU-RSB   Document 298   Filed 04/10/19   Page 8 of 10   Pageid#: 1185

Mr. Smith disagrees that the media coverage in this case has been "extensive." This case has been covered primarily by one newspaper, the *Danville Register & Bee*, with few other media mentions. The *Register & Bee* has covered the hearings in this case, but very few of the stories have received any internet comments. This includes the March 15, 2019 editorial cited by the prosecution.[4] This does not amount to extensive publicity, and there is simply no reason to believe that the *Register & Bee*, let alone the other media outlets who have barely covered this case, will publicize the identities of jurors in this case.

3. **Conclusion**

In sum, the prosecution has failed to carry its burden of proof that providing the defense with the jury list would jeopardize anyone's life or safety. As set forth in *Dinkins*, the use of an anonymous jury is an "unusual measure" that "must be plainly warranted," and there must be "strong reason" to conclude that an anonymous jury is required. *Dinkins*, 691 F.3d at 372. Otherwise, section 3432 mandates that capital defendants be provided a list of the venire members and their addresses in advance of trial.

An anonymous jury should be, and is, rare. The fact that Mr. Smith and his codefendants are charged with racketeering conspiracy is insufficient. Otherwise, there would be an anonymous jury in every alleged RICO case. There is no evidence that Mr. Smith or his codefendants have interfered with the judicial process in the past. On the contrary, Mr. Smith is eager for his day in court. Ordering an anonymous jury would tilt the scales in favor of the prosecution by eroding the presumption of innocence and impeding the selection of an impartial jury. While this might be a desirable result for the prosecution, it is simply unwarranted here.

---

[4] The Editorial Board, "Justice For, and In Our Community," DANVILLE REGISTER & BEE (March 15, 2019), available at https://www.godanriver.com/opinion/editorials/justice-for-and-in-our-community/article_c227cd18-4690-11e9-aded-87ec3b247451.html (last accessed April 10, 2019).

WHEREFORE, Mr. Smith respectfully requests that this Honorable Court deny the prosecution's Motion for an Anonymous Jury.

Respectfully submitted,

JERMAY ANTONIO SMITH, JR.

s/ Bernadette Donovan

Matthew L. Engle
Virginia Bar No. 46833
*Counsel for Mr. Smith*
DONOVAN & ENGLE, PLLC
1134 East High Street, Unit A
Charlottesville, Virginia 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
matthew@donovanengle.com

Bernadette M. Donovan
Virginia Bar No. 82054
*Counsel for Mr. Smith*
DONOVAN & ENGLE, PLLC
1134 East High Street, Unit A
Charlottesville, Virginia 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
bernadette@donovanengle.com

## CERTIFICATE

I, Bernadette Donovan, Esq., hereby certify that on this 10th of April, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ Bernadette M. Donovan