CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 2 2019

JULIA C. DUDLEY, CLERK
BY: /s/ Signature
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No.: 4:18-cr-00012 |
| v. ) | |
| ) | |
| ) | |
| DASHAWN ROMEER ANTHONY, ) | |
| et al., ) | |
| ) | By: Michael F. Urbanski |
| Defendants. ) | Chief United States District Judge |

## ORDER

This matter comes before the court on a number of motions regarding issues and disagreements over the composition and empaneling of the jury that will decide this case. These issues are: (1) the United States' motion for an anonymous jury, ECF No. 283; (2) whether the venire ought to be drawn from the Roanoke Division or the Danville Division, ECF Nos. 279 & 288; and (3) how voir dire ought to be conducted, ECF Nos. 280, 281 & 285. While the main motions have been cited, responses in support and opposition and motions joining or giving notice of a lack of opposition have been filed by multiple parties, all requesting this court decide each issue in a variety of ways; argument was heard on April 19, 2019. ECF No. 319. The court will address and rule on each matter in turn.

I.

The United States moved for an anonymous jury in this case on the grounds that the defendants are alleged to have conspired together in organized crime, were allegedly members of a group with the capacity to hurt the jurors, have attempted to interfere with the judicial process, and face considerable penalties, giving them "significant incentive to engage

in conduct that would affect the trial." ECF No. 283, at 10. This motion has been opposed by several of the defendants, see, e.g., ECF No. 295 (Javontay Jacquis Holland); ECF No. 298 (Jermay Antonio Smith, Jr.); ECF No. 304 (Jalen Cormarrius Terry); ECF No. 317 (Montez Lamar Allen). Those who oppose the motion argue that an anonymous jury "may interfere with defendants' ability to conduct voir dire and to exercise meaningful peremptory challenges, thereby implicating defendants' Sixth Amendment right to an impartial jury." ECF No. 298, at 2–3 (citing United States v. Shryock, 342 F.3d 948, 373 (9th Cir. 2003). They also maintain that an anonymous jury "sends a message from the Court that the accused is so dangerous and so guilty that nobody is safe." ECF No. 296, at 6.

Though ultimately this decision is within the court's discretion, an anonymous jury is not to be empaneled lightly. As defendants point out, an anonymous jury threatens two substantial constitutional rights: the right to trial by an impartial jury (the selection of which requires an informed voir dire) and the right to a presumption of innocence (made the more difficult for jurors to respect by the inferences they may unavoidably draw from their own anonymity). A district court may empanel an anonymous jury in any non-capital case in which "the interests of justice so require." United States v. Dinkins, 691 F.3d 358, 372 (4th Cir. 2012) (quoting 28 U.S.C. § 1863(b)(7) and citing United States v. Ochoa-Vasquez, 428 F.3d 1015 (11th Cir. 2005)). In a capital case, however, the district court may empanel an anonymous jury only after determining "by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." Id. at 372 (citing 18 U.S.C. § 3432). This case was originally charged as a capital crime, but the United States is not seeking the death penalty. United States v. Hall, 506 Fed. App'x 245 (4th Cir. Jan 24, 2013), left open the

2

question of whether a case loses its capital nature for purposes of deciding anonymity of the jury when the government decides not to pursue the death penalty. The court therefore will consider this issue under the heightened standard of a capital case.

An anonymous jury is only warranted in the rare circumstance when "(1) there is a strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised absent anonymity; and (2) reasonable safeguards have been adopted to minimize the risk that the rights of the accused will be infringed." Dinkins, 691 F.3d at 372. United States v. Ross, 33 F.3d 1507, 1519 (11th Cir. 1994), provided five factors, adopted by the Fourth Circuit in Dinkins, for consideration in determining whether to take such an extraordinary precaution: (1) a defendant's involvement in organized crime; (2) a defendant's participation in a group with capacity to harm jurors; (3) a defendant's past attempts to interfere with the judicial process; (4) the potential that, if convicted, a defendant will suffer a lengthy incarceration and substantial monetary penalties; and (5) whether a trial has been subject to extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment. Dinkins, 691 F.3d at 373 (citing Ross, 33 F.3d at 1520). These factors are neither exhaustive nor dispositive but provide the court with a guide when considering this matter in light of the totality of the circumstances. Id. To support the third of these factors, the government points to an incident that occurred in Danville after the arrests—a named victim in the indictment "was lured to a location in the heart of the defendants' gang territory and shot to death in broad daylight." ECF No. 267, at 2. While the government has presented no evidence linking the murder to this case, it suggested that its timing was

3

suspicious. As such, the government expressed concern that this case was susceptible to improper efforts to influence the judicial process, requiring that jurors' identities be protected.

Mindful of the government's concerns, the court finds an anonymous jury not to be warranted under the circumstances of this case. While defendants are indeed alleged to have been involved in organized crime, are facing potential lengthy incarceration and substantial monetary penalties, and are part of a case that has been subject to considerable publicity, these factors do not create circumstances extreme enough to provide "a strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised if the jury does not remain anonymous." Dinkins, 691 F.3d at 372. The court finds one significant factor lacking in these circumstances—verifiable attempts to intervene in the judicial system by any defendants. In almost every case in which a court decided an anonymous jury was warranted, the court had undisputed evidence of specific instances of meddling in the judicial process, usually by violence or threat. See, e.g., id. at 375 (upholding a district court's decision to empanel an anonymous jury after considering evidence of the defendants' past murder of an individual who was cooperating or continuing to cooperate with law enforcement) ("...the record before the district court overwhelmingly supported a finding that the defendants previously had engaged in attempts to interfere with the judicial process. In fact, the district court based its decision to empanel an anonymous jury on this consideration alone."); Hall, 506 Fed. App'x at 249 ("We begin by addressing...whether the record shows that Defendant...interfered with the judicial process in the past. At the time the district court ruled on the anonymous

4

jury issue, the record contained evidence supporting the conclusion that Defendant...had previously attempted to interfere with the judicial process. The indictment contained evidence that Defendant...killed [witness] for providing information to law enforcement officers.").

Here, in contrast, there is nothing—other than timing—linking the shooting incident to this case. Substantial discovery has been produced, and there has been no report that witnesses have been threatened or harassed, or that there has been any other attempt to interfere with the prosecution of this case. Absent such evidence, the court will not limit defendants' constitutional rights and take the drastic step of empaneling an anonymous jury.[1] The government's motion for an anonymous jury is **DENIED**.

## II.

The next issue to be addressed is the composition of this jury. The government has filed a motion to use a venire of potential jurors from the Roanoke Division, rather than the Danville Division. ECF No. 279. The government points out that a trial in Danville would be "greatly inconvenient" due to the size of the courtroom, lack of appropriate holding cells at the Danville federal courthouse, location of defense counsel offices, and witness safety. Id. at 2. No defendant believes that the case can be tried in Danville. Further, the government argues that, if the trial is held at the federal courthouse in Roanoke with a Danville Division venire, the jurors would be put through "undue hardship" by being forced to drive from distant counties to Roanoke for voir dire and then, for those empaneled, trial. Id. at 4. Defendant Javontay Jacquis Holland has moved to empanel a Danville Division venire,

---

[1] This ruling is, of course, subject to change should evidence of interference with the judicial process come to light.

5

arguing the Danville community has "an inherent right to try its alleged offenders absent good cause otherwise. ECF No. 289, at 3. This motion has been joined by defendant Montez Lamar Allen. ECF No. 290.

The events that gave rise to this litigation occurred in Danville and primary affected its citizens. Danville Division citizens should not lose their opportunity to participate in the jury whose verdict will determine the outcome of a case that affects their community. This case emanates from the Danville Division and belongs there. The only reason the parties and the court are forced to consider a jury venire drawn from the Roanoke Division is the inadequacy of the Danville courthouse for a case of this size.[2] This is a Danville Division case; the court will draw the jury from a Danville Division venire.

The court is mindful of the myriad logistical issues attendant to the use of a Danville Division venire for a trial held in Roanoke. The government argues that "utilizing jurors from the Danville Division would cause undue hardship on the jurors" by forcing jurors to commit long hours to commute to court from distant Danville counties. ECF No. 279, at 4. To be sure, using a Danville Division venire will require all jurors to travel to Roanoke, but, given the geography of the district and the fact that Roanoke Division jurors are drawn from surrounding counties, it is not unusual to have jurors traveling to trial in Roanoke from parts distant as well. The court is committed to ameliorating these concerns to the extent possible by offering jurors travel options and shortening daily court hours. On balance, the court believes that the interest in having this matter heard by a venire drawn from the Danville

---

[2] The court has considered using its Lynchburg Division courthouse for this case, but the space for defense counsel is too small for the present number of defendants, some of whom have two counsel. The court will revisit this issue after the related Davis case is tried.

6

Division outweighs the logistical issues associated with juror travel. As such, the government's motion for a venire comprised of potential jurors from the Roanoke Division is thus **OVERRULED**.

The court does, however, agree with the government's point, made during argument, that a venire drawn from the Danville Division should be larger than usual. To that end, the court will order a venire of 300 potential jurors. Additionally, the court will empanel a greater number of alternate jurors (four to six).

### III.

The third and final issue regarding the jury is how to conduct voir dire. The government moved that the court not use a jury questionnaire, ECF No. 280; defendants Jermay Antonio Smith, Jr., ECF No. 281, and Javontay Jacquis Holland, ECF No. 285, have filed motions for use of a jury questionnaire. These motions are joined by defendant Montez Lamar Allen. ECF No. 290 (joining ECF No. 281).

The right to "a voir dire adequate to assure a defendant a jury, all of whose members are 'able impartially to follow the court's instructions and evaluate the evidence,'" is secured by the Sixth Amendment of the United States Constitution. United States v. Tipton, 90 F.3d 861, 877 (4th Cir. 1996) (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981)). Trial courts "retain[ ] great latitude in deciding what questions should be asked on voir dire." Mu'min v. Virginia, 500 U.S. 415, 424 (1991). While no constitutional rule guarantees defendants individual, rather than collective, voir dire, Goins v. Angelone, 52 F. Supp. 2d 638, 669 (E.D. Va. 1999), the Fourth Circuit has made it clear that individual questioning is permissible, and may even be preferable, depending on the circumstances. See United States

7

v. Bakker, 925 F.2d 728, 734 (4th Cir. 1991) (commenting that trial courts are permitted to question prospective jurors collectively rather than individually, particularly when initial questioning is provided for jurors whose responses are "less than satisfactory").

Given that this matter lies largely within its discretion, the court has determined that a hybridized voir dire, with some collective and some individual questioning, should be conducted. The court has already decided to use a jury questionnaire and is accepting comment from the parties on the proposed questionnaire. See ECF No. 323. The answers provided to the questionnaire by the members of the venire will be available to the parties prior to the commencement of voir dire. Based upon the responses to the questionnaire, some potential jurors may be recused from the panel by motion or agreement of the parties. The court envisions that voir dire of the remaining panel members will occur over five days, with one fifth of the remaining panel members brought in each day. During oral voir dire, the court will first question the potential jurors collectively and then permit the parties to ask questions both to the collective group and to individuals as appropriate.

## IV.

For the reasons stated above, the government's motion regarding jury composition, ECF No. 279, motion to dispose of the use of a jury questionnaire, ECF No. 280, and motion for an anonymous jury, ECF No. 283, are **DENIED**.

Defendants Javontay Jacquis Holland's motion to empanel a Danville Division venire, ECF No. 288, is **GRANTED**.

Defendants Jermay Antonio Smith, Jr.'s, ECF No. 281, and Javontay Jacquis Holland's, ECF No. 285, motions for use of a jury questionnaire are **GRANTED**.

It is **SO ORDERED**.

Entered: 05-02-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge